**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| ALEX RIVERA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-cv-0975 (TSC) |
| | ) | |
| POWER DESIGN, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## <u>MEMORANDUM OPINION</u>

Plaintiffs Alex Rivera, Medardo Escobar, Jenry Escobar, Alfonso Escobar and Emerson Lopez (the "Named Plaintiffs") were employed as electricians on a condominium development project at 460 New York Avenue NW in Washington, D.C. (the "Project") in December 2014. (*See* Amended Collective and Class Action Complaint (ECF No. 1-2 at ECF pp. 9-24) (the "Amended Complaint") ¶¶ 4, 7, 10, 13, 16).  They have brought claims against their alleged joint employers – Defendants Power Design, Inc., E.A. Electric, LLC and Emerson Alvarado – on behalf of themselves and others similarly situated, under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), the D.C. Minimum Wage Act, D.C. Code § 32-1001, *et seq.* (the "DCMWA"), the D.C. Wage Payment Collection Law, D.C. Code § 32-1301, *et seq.*, and the Workplace Fraud Act, D.C. Code § 32-1321.01, *et seq.*  The Named Plaintiffs allege that they were not paid the D.C. or federal minimum wage or overtime for approximately one month of work performed for the Defendants on the Project.  (Am. Compl. ¶¶ 29, 39-44, 51-53, 67-68).

The Named Plaintiffs' Motion for Conditional Certification of Collective Action and to Facilitate Notice (the "Motion") requests that the court conditionally certify this case as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and the DCMWA, former D.C. Code

§ 32-1012(b), on behalf of "all nonexempt employees who performed construction duties for Power Design at the [Project] from April 2012 to the final disposition of this action." (Motion at 1). The Named Plaintiffs also request that the court facilitate notice to all such persons of their rights to join in this case. (*Id.*).

Upon consideration of the Motion and supporting memorandum, Power Design's opposition thereto, and the Named Plaintiffs' reply in support thereof, and for the reasons set forth below, the Named Plaintiffs' Motion is hereby **GRANTED IN PART and DENIED IN PART**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### a.  Factual Background

The Named Plaintiffs allege that Defendants employed them as electricians on the Project in December 2014. (*See* Am. Compl. ¶¶ 4, 7, 10, 13, 16). Power Design asserts that while it served as an electrical installation subcontractor on the Project, it also subcontracted certain electrical installation work on the Project out to several of its own subcontractors, including E.A. Electric. (*See* Opp'n at 1). Power Design also asserts that the Named Plaintiffs worked for E.A. Electric and its owner, Emerson Alvarado, not for Power Design itself. (*See id.* at 1, 6).

The Named Plaintiffs allege, however, that Power Design used E.A. Electric as a "labor-only broker," and that Power Design was their joint employer along with E.A. Electric and Alvarado, citing Power Design's "activities at the Project and its control over workers hired by its labor brokers." (Reply at 2). The Named Plaintiffs allege, for example, that (i) Power Design provided all instructions to them, with an E.A. Electric employee serving only to translate the instructions from English to their native Spanish; (ii) they were required to sign in and out each

day on Power Design timesheets; and (iii) they were required to wear safety equipment with Power Design's logo.  (*See id.* at 2-3 (citing Am. Compl. ¶¶ 32-33)).

The Named Plaintiffs also allege that (i) they observed between ten and fifteen other workers performing similar work on the Project while they were there (*see* Mot. Exs. 1-5 (Declarations of Each Named Plaintiff) ¶ 10); (ii) a Power Design supervisor closely monitored and directed the work of these individuals, all of whom also recorded their hours on Power Design timesheets (*see* Am. Compl. ¶¶ 32, 36); and (iii) about five of these individuals stated that they had not received the pay they had been promised (*see* Mot. Ex. 3 (Declaration of Jenry Escobar) ¶ 10).

b. Procedural Background

The Named Plaintiffs filed their initial complaint against the Defendants in the Superior Court of the District of Columbia in April 2015.  (*See* Complaint for Unpaid Wages (the "Initial Complaint")).  The Initial Complaint alleged that the Defendants violated the DCMWA and the D.C. Wage Payment Collection Law in failing to pay the Named Plaintiffs for work they performed on the Project, and requested relief including $11,040 in unpaid wages and $33,120 in liquidated damages.  (*See id.*).

On May 13, 2015, the Named Plaintiffs filed an Amended Complaint in Superior Court, adding claims for violation of the FLSA and the Workplace Fraud Act.  (*See* Am. Compl. ¶¶ 46-56, 70-75).  They also restyled their action as, *inter alia*, one brought on behalf of themselves and putative FLSA and DCMWA opt-in collectives under 29 U.S.C. § 216(b) and D.C. Code § 32-1012(b).  (*See id.* ¶¶ 22-26).  Putative plaintiffs were alleged to include individuals who performed construction duties for Power Design at the Project from April 2012

to the final disposition of this action, who were similarly undercompensated for their work.  (*See id.* ¶¶ 22-23).

In June 2015, Power Design, with the consent of E.A. Electric and Alvarado, removed this action to federal court pursuant to 28 U.S.C. § 1441(c) on the ground that the addition of the FLSA claim conferred jurisdiction upon this court pursuant to 28 U.S.C. § 1331.  (*See* Notice of Removal ¶¶ 5, 10).

In July 2015, the Named Plaintiffs filed a status report informing this court that they had settled with E.A. Electric and Alvarado while the case was still in Superior Court.  The court dismissed the action with prejudice against E.A. Electric and Alvarado the day after the status report was filed.[1]

In August 2015, the Named Plaintiffs filed the instant Motion, requesting the court to conditionally certify this case as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and the DCMWA, former D.C. Code § 32-1012(b).  Specifically, the Named Plaintiffs seek conditional certification on behalf of "all nonexempt employees who performed construction duties for Power Design at the [Project] from April 2012 to the final disposition of this action."  (Mot. at 3).  The Named Plaintiffs also request that the court facilitate notice to all such persons of their rights to join in this case.  (*See id.*).

Power Design opposes conditional certification on numerous grounds.  First, it argues that the Named Plaintiffs' allegations that they are similarly situated to the putative plaintiffs (i) are conclusory and insufficient; (ii) fail to provide sufficient evidence that putative plaintiffs even exist; and (iii) overlook the fact that the Named Plaintiffs received the wages at issue in this

---

[1] In December 2015, the court granted Power Design's Consent Motion to Add Necessary Defendants, once again making E.A. Electric and Alvarado party defendants to this action.

action via their settlement with E.A. Electric and Alvarado, while the putative plaintiffs have not. Second, Power Design argues that it was not the Named Plaintiffs' or the putative plaintiffs' employer-in-fact.  Third, Power Design asserts that it is not capable of providing the requested notice to putative class members because it does not have their names and last known addresses.

## II.    FLSA CERTIFICATION

The FLSA requires employers to pay minimum wage for compensable working time and an overtime premium for compensable hours worked in excess of forty hours per week.  *See* 29 U.S.C. §§ 206, 207.  The FLSA contemplates what is commonly referred to as a "collective action," in which named plaintiffs bring claims on behalf of other "similarly situated" employees who become part of the action only upon filing a written consent:

> An action . . . may be maintained against any employer . . . by any one or more employees for and [o]n behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  "With collective actions, district courts have considerable discretion in managing the process of joining similarly situated employees in a manner that is both orderly and sensible."  *Dinkel v. Medstar Health, Inc.*, 880 F. Supp. 2d 49, 52 (D.D.C. 2012); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Federal courts typically engage in a two-stage inquiry when evaluating whether an FLSA claim should proceed as a collective action.  *See Dinkel*, 880 F. Supp. 2d at 52.  "At the first stage, often loosely referred to as 'conditional certification,' the named plaintiffs must present some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees."  *Id.* at 53 (quotation and citation omitted); *see also Eley v. Stadium Grp., LLC*, No. 14-cv-1594 (KBJ), 2015 WL 5611331, at *1 (D.D.C. Sept. 22, 2015).  Put differently, "plaintiffs must make

a 'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 92 (D.D.C. 2013) (quoting *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 117 (D.D.C. 2004)). This showing "has been described as 'not particularly stringent, fairly lenient, flexible, [and] not heavy.'" *Dinkel*, 880 F. Supp. 2d at 53 (alteration in original) (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)) (quotation omitted). This showing may also "be satisfied based on pleadings and affidavits." *Blount*, 945 F. Supp. 2d at 93.

If the named plaintiffs make the required showing, then a court "may conditionally certify the class and may facilitate notice of the collective action to potential plaintiffs to give them the opportunity to opt in to the litigation." *Id.* at 92. The case then "proceeds as a representative action through discovery." *Id.*

The second stage of the certification process occurs after discovery, at which point the defendant "may move to decertify the class based on the evidentiary record developed during the discovery period." *Id.* at 93. At that point, the court conducts a more searching inquiry to determine "whether each plaintiff who had opted in . . . is in fact similarly situated to the named plaintiff[s]." *Dinkel*, 880 F. Supp. 2d at 53 (alteration in original) (quotation and citation omitted).

This case is at the conditional certification stage, and therefore, as noted above, the Named Plaintiffs' burden at this stage is not onerous and may be satisfied based on the pleadings and affidavits.

The Named Plaintiffs assert that they and the prospective class members:

are similarly situated in that they all: (a) had similar duties; (b) performed similar tasks; (c) were protected by the same requirements under the FLSA to receive

> minimum wages and overtime wages unless specifically exempted; (d) were
> subjected to similar pay plans; (e) were required to work and did work in excess of
> forty hours per week; and (f) . . . were not paid for all hours worked.

(Am. Compl. ¶ 24).  Power Design argues that the Named Plaintiffs have failed to sufficiently

establish that they are similarly situated to any putative plaintiffs.  The court finds that at this

stage, the Named Plaintiffs have met their burden of showing that they are similarly situated to

other putative plaintiffs.

As an initial matter, the court disagrees with Power Design's assertion that the Named

Plaintiffs have insufficiently alleged the existence of putative plaintiffs.  The Named Plaintiffs

each assert that they observed between ten and fifteen other workers performing similar work as

them on the Project.  (*See* Mot. Exs. 1-5 (Declarations of Each Named Plaintiff) ¶ 10).  They also

allege that a Power Design supervisor closely monitored and directed the work of these

individuals, all of whom recorded their hours on Power Design timesheets.  (*See* Am. Compl.

¶¶ 32, 36).  Lastly, a declaration from one of the Named Plaintiffs states that about five putative

plaintiffs told him that they had not received the pay they had been promised.  (*See* Mot. Ex. 3

(Declaration of Jenry Escobar) ¶ 10).

Power Design contends that the dearth of any information pertaining to these putative

plaintiffs is fatal to the Motion.  But allegations regarding the kinds of missing information cited

by Power Design – *i.e.*, the putative plaintiffs' specific job titles, the Power Design subcontractor

with whom they contracted, their pay rates, hours worked, and the like – are not necessary at this

stage of the proceedings.  (*See* Opp'n at 10).  The appropriate time to address the existence or

absence of such information is at the second stage of the certification process, at which time

Power Design "may move to decertify the class based on the evidentiary record developed

during the discovery period," thus requiring the court to make a factual determination as to

"whether the plaintiffs who have opted in are in fact 'similarly situated'" to the Named Plaintiffs. *Blount*, 945 F. Supp. 2d at 93 (citations omitted).

All the Named Plaintiffs are required to do at this point in the proceedings is "present some evidence, beyond pure speculation, of a factual nexus between the manner in which [Power Design's] alleged policy affected" them and the manner in which it affected the putative plaintiffs. *Dinkel*, 880 F. Supp. 2d at 53 (quotation and citation omitted). The court finds that the Named Plaintiffs have satisfied their modest burden by alleging that both they and the putative plaintiffs worked for Power Design on the Project and were undercompensated in violation of the FLSA. (*See*, *e.g.*, Mem. at 3; Am. Compl. ¶¶ 35, 37-43). The fact that Power Design disputes that it controlled the Named Plaintiffs' or putative plaintiffs' work, and its assertion that it had no control over its subcontractors' employees, are of no moment at this point, given that plaintiffs may satisfy their burden at the conditional certification stage by reference to the pleadings and affidavits. The appropriate time to address Power Design's arguments in this regard is at the second stage of the certification process.[2]

Power Design also argues that, because it was not the Named Plaintiffs' or putative plaintiffs' employer-in-fact, the Named Plaintiffs cannot show that they are similarly situated to the putative plaintiffs. (Opp'n at 6). However, given the modest showing that plaintiffs must make at the conditional certification stage, "courts have reserved consideration of whether

---

[2] One of Power Design's arguments is that the Named Plaintiffs are not similarly situated to the putative plaintiffs because the Named Plaintiffs received the wages at issue in this action via their settlement with E.A. Electric and Alvarado, whereas any putative plaintiffs have not. (*See* Opp'n at 10-11). Power Design cites no case law in support of the proposition that this settlement somehow destroys the factual nexus between the manner in which Power Design's alleged policy affected the Named Plaintiffs and the manner in which it affected any putative plaintiffs such that conditional certification would be inappropriate. The court is not persuaded by this unsupported argument.

separate employers are joint employers for a final, stage two determination." *Manning v. Goldbelt Falcon*, LLC, No. 08-cv-3427 (JEI), 2010 WL 3906735, at *3 (D.N.J. Sept. 29, 2010); *see also Cedillos-Guevara v. Mayflower Textile Servs., Co.*, 14-cv-196 (GLR), 2014 WL 7146968, at *3 (D. Md. Dec. 12, 2014) ("Given the limited amount of evidence presented and the low burden of proof required for conditional certification motions, the Court will reserve judgment on whether Defendants qualify as joint employers under the FLSA."); *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 239 (D.Me. 2011) (issues relating to liability as a joint employer "are properly reserved for dispositive motions or for the second stage of the class certification process").

Per the foregoing, the court finds that the Named Plaintiffs have sufficiently alleged at this stage of the case that Power Design was their employer under the FLSA by alleging that:

    i.    Power Design supervisors monitored and directed their work on the Project (*see* Am. Compl. ¶ 32);

    ii.    "Power Design provided all safety equipment to [them], including helmets and vests [which] had Power Design's logo" on them (*id.* ¶ 33);

    iii.    "Power Design provided all specialized tools and materials" needed for the job (*id.* ¶ 35);

    iv.    They "recorded their hours on timesheets created and maintained by Power Design and featuring only the Power Design logo" (*id.* ¶ 36); and

    v.    E.A. Electric and Alvarado's only roles were "to identify and deliver laborers to work under the direction and control of Power Design supervisors, and to serve as 'pass throughs' for wages Power Design owed" them (*id.* ¶ 34).

The court likewise finds that the Named Plaintiffs have sufficiently alleged that Power Design was also the putative plaintiffs' employer by alleging that:

    i.    Each of the five Named Plaintiffs observed "between 10 and 15 other workers perform[ing] similar work as [them] around the same time" (Mot. Exs. 1-5 (Declarations of Each Named Plaintiff) ¶ 10);

     ii.     The same Power Design supervisor who oversaw their work also "closely monitored and directed the work of" the other workers (Am. Compl. ¶ 32);

    iii.     The other workers also "recorded their hours on timesheets created and maintained by Power Design and featuring only the Power Design logo" (*id.* ¶ 36); and

    iv.     About five of the other workers told Named Plaintiff Jenry Escobar "that they had not received the pay they were promised" (Mot. Ex. 3 (Declaration of Jenry Escobar) ¶ 10).

Power Design also asserts that even if it were liable to the Named Plaintiffs as a joint employer, the Named Plaintiffs fail to allege the employment relationship between Power Design and the putative plaintiffs – *i.e.*, they fail to allege which of Power Design's subcontractors were directly responsible for hiring, managing and paying the putative plaintiffs. (*See* Opp'n at 6-7). Power Design claims that this failure leaves it "guessing" as to who these putative plaintiffs could be. (*Id.*). The court finds this argument unpersuasive for several reasons. First, as the Named Plaintiffs correctly point out, the Amended Complaint alleges that at least five other employees also worked for "the Defendants" – which the court takes to mean all three Defendants – on the Project. (*See* Am. Compl. ¶ 29). Thus, E.A. Electric is, in fact, alleged to have hired putative plaintiffs. That is all that is necessary at this juncture of the case.

Moreover, while the Named Plaintiffs have not identified Power Design's other subcontractors on the Project, it is fair to infer that Power Design knows the identities of those subcontractors, and will disclose their identities during the discovery period between the first and second stages of the certification process. The court agrees with the Named Plaintiffs that the same considerations that applied in *Lima v. Int'l Catastrophe Solutions, Inc.* are applicable here:

> Defendants' pay records and agreements to subcontract will easily reveal whether a common plan existed to improperly pay overtime salaries. It seems appropriate to certify the collective action at this time and revisit the question later after some discovery. If the allegations regarding the [contract between a company and its subcontractor] prove to be true, it would be reasonable to conclude that [the company] may also have engaged in these same practices with other subcontractors.

> It is unlikely that the other subcontractors' workers received a different rate of pay or did substantially different work.  If sufficient evidence is not developed to demonstrate that the other subcontractors were not involved in the same alleged scheme or practice, the Court may decertify the collective action as to those parties after sufficient discovery is conducted.

493 F. Supp. 2d 793, 799-800 (E.D. La. 2007) (citation omitted).

Given that the Named Plaintiffs have sufficiently alleged that Power Design employed them and the putative plaintiffs on the Project, and given the lenient standard at this early stage of the case, the court is satisfied that the Named Plaintiffs and the putative plaintiffs are similarly situated with respect to Power Design's alleged policies so as to justify conditional certification and notice to the putative plaintiffs.

In light of the foregoing, the court will conditionally certify the following FLSA class pursuant to 29 U.S.C. § 216(b):

> **All non-exempt employees who performed construction duties for Power Design and/or its subcontractors at the condominium development project at 460 New York Avenue NW, Washington, D.C., from April 2012 to the final disposition of this action.**

## III.     FACILITATION OF NOTICE

The Supreme Court has recognized that the benefits of a collective action "depend on employees receiving accurate and timely notice . . . so that they can make informed decisions about whether to participate." *Sperling*, 493 U.S. at 170.  "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Id.* at 171.

In the instant Motion, the Named Plaintiffs request that the court order Power Design to provide them with the names and last known addresses of all non-exempt employees who

performed construction duties for Power Design at the Project from April 2012 to the final disposition of this action.  (*See* Mem. at 4).

Power Design asserts that ordering it to provide the Named Plaintiffs with the last known addresses of the putative plaintiffs will not facilitate notice to class members because it does not have their names or contact information, given that it subcontracted electrical installation work at the Project to E.A. Electric and others.  In support of this claim, Power Design provides a Declaration of its Legal Counsel, who states that he is "familiar with Power Design's corporate structure and its executive, administrative, financial and management functions," and that

- "Power Design does not have documents or information in its possession, custody, or control pertaining to the construction workers, including electricians and laborers, hired by its subcontractors, including E.A. Electric, to work on the Project";

- "Power Design does not have in its possession, custody or control the names or contact information of the subcontractors' workers who performed electrical installation work or other duties at the Project"; and

- "Power Design does not have in its possession, custody or control any time sheets, pay rate, hours worked or payroll information regarding subcontractors' workers who performed electrical installation work or other duties at the Project."

(Opp'n Ex. 2, Declaration of Bill Jordan (the "Jordan Declaration") ¶¶ 1-2, 4-6).

The Named Plaintiffs take issue with Power Design's claims, arguing that the facts as pled indicate that the individuals who worked for Power Design and/or its labor brokers on the Project were required to sign in and out on Power Design timesheets each day, which Power Design presumably still has in its possession.  (*See* Reply at 5-6).  The Named Plaintiffs assert that identifying the information needed to facilitate notice should be as simple as Power Design searching its own business and employment records and reaching out to its labor brokers on the Project to ask them to do the same with their business and employment records.  (*See id.*).

The court agrees with the Named Plaintiffs.  As an initial matter, the Jordan Declaration provides only the vaguest support for its conclusions – *i.e.*, a Power Design lawyer's purported familiarity with the company's "corporate structure and its executive, administrative, financial and management functions."  (Jordan Declaration ¶ 2).  It says nothing of whether the declarant, or anyone else associated with Power Design (such as, for example, an HR employee or an employee specifically tasked with maintaining the company's business and/or employment records), conducted any kind of search for the names and addresses of potential class members.

The Jordan Declaration also focuses solely on Power Design's subcontractors on the Project, even though potential class members would include not only those who worked for Power Design's subcontractors, but also those who worked directly for Power Design.  For example, Power Design's representation that it subcontracted out "***certain*** electrical installation work" in its role as "an electrical installation subcontractor on the Project" would seem to indicate that certain other work was performed directly by the company's employees.  (Opp'n at 1) (emphasis added).  Individuals employed directly by Power Design who performed construction duties at the Project would fall within the putative class certified by this court.  Surely, at the very least, Power Design can provide the Named Plaintiffs with the names and addresses of any such individuals.

Moreover, as the Named Plaintiffs point out, Power Design can simply contact the subcontractors it worked with on the Project to request the names and addresses of any potential class members.  Power Design's argument that it is unable to do so because the Named Plaintiffs have not identified those subcontractors defies common sense.  All that Power Design needs to know in order to request the names and last known addresses of potential class members from its subcontractors on the Project is (i) the scope of the putative class (which is provided by this

Memorandum Opinion and the accompanying Order), and (ii) the names of those subcontractors (which Power Design presumably possesses given that it did business with them on the Project).

Given the foregoing, and in light of the fact that "[c]ourts routinely order the production of names and addresses in collective actions," *Blount*, 945 F. Supp. 2d at 97; *see also Castillo v. P & R Enterprises, Inc.*, 517 F. Supp. 2d 440, 448 (D.D.C. 2007); *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 121 (D.D.C. 2004), the court hereby orders Power Design to (i) thoroughly review its business and employment records for the Project for the relevant class period in order to find the names and addresses of any potential class members, and (ii) contact any of its subcontractors on the Project that may have records relating to any potential class members and request that they do the same. Power Design will have until three months from the issuance date of this Memorandum Opinion to provide the Named Plaintiffs with the names and last known addresses of all potential members of the class conditionally certified above.

Additionally, the court notes that while the Named Plaintiffs asserted in their Motion that they would "provide the form of a proposed notice at the time of supplementation of this motion" (Mot. at 4), it does not appear that they have ever provided such form to the court. Therefore, the court hereby orders the Named Plaintiffs to submit a proposed form of notice for the plaintiff class conditionally certified above by no later than one month from the issuance date of this Memorandum Opinion.

## IV.   DCMWA CERTIFICATION

The Named Plaintiffs acknowledge that the DCMWA portion of their Motion relies not on the present iteration of D.C. Code § 32-1012(b), which was in effect when their Initial Complaint was filed in Superior Court in April 2015, but on the version of the statute that was in effect in December 2014, when they performed the work at issue in this case. (*See* Mot. at 1 &

n.1, 3; Mem. at 1-2). This former version of the DCMWA provided for an opt-in consent

procedure mirroring that of the FLSA:

> [An] [a]ction to recover damages . . . may be maintained . . . by any 1 or more
> employees for and on behalf of the employee and other employees who are
> similarly situated. *No employee shall be a party plaintiff . . . unless the employee*
> *gives written consent to become a party and the written consent is filed in the court*
> *in which the action is brought.*

D.C. Code § 32-1012(b) (2001) (emphasis added); *compare with* 29 U.S.C. § 216(b). When this

version of the DCMWA was in effect, federal courts routinely evaluated FLSA and DCMWA

claims using the same standards and procedures for conditional certification and notice. (*See*,

*e.g.*, Opp'n at 4 & nn.3, 4).

   In February 2015 – about two months before the Initial Complaint was filed – the

DCMWA was amended. Its opt-in and written-consent procedures were excised and replaced

with broader language providing that actions under the DCMWA "may be maintained by one or

more employees who may designate an agent or representative to maintain such action for and

on behalf of themselves or on behalf of all employees similarly situated." D.C. Code § 32-

1308(a)(1); *see also* D.C. Code § 32-1012(a) ("A civil action [under the DCMWA] may be

commenced according to § 32-1308.").

   "Without opt-in and written-consent procedures that restrict the right of recovery to those

who affirmatively file consents to participate in the suit, group claims brought under the new

DCMWA are likely to resemble class actions, rather than collective actions," in which case they

would presumably be governed by Federal Rule of Civil Procedure 23. *Eley*, 2015 WL 5611331,

at *4 (quotation, citations and alterations omitted). Thus, as was the case in *Eley*, it may well be

that the Named Plaintiffs "cannot proceed on their DCMWA claims utilizing the procedures

applicable to the FLSA, and instead, they may be required to seek class certification under

Rule 23." *Id.* (citation omitted).

While the parties have acknowledged that the Named Plaintiffs are moving pursuant to the version of D.C. Code § 32-1012 that was in effect during the month that they worked on the Project, the parties do not explain why this is the correct approach.  (*See* Mot. at 1 & n.1, 3; Mem. at 1-2; Opp'n at 3 & n.2).  For example, neither party addresses why the Named Plaintiffs should not be required to proceed with their DCMWA claim under the version of section 32-1012 that was in effect at the time they filed their Initial Complaint (*i.e.*, the present version).  Similarly, neither party addresses the question of whether the present version of section 32-1012 applies retroactively under the circumstances here.

The court will not grant the Motion as to the Named Plaintiffs' DCMWA claim in the absence of any briefing on what version of D.C. Code § 32-1012 applies to that claim.  If Plaintiffs intend to further pursue collective certification and the facilitation of notice under the DCMWA, they must file a supplemental brief addressing the question of what version of section 32-1012 properly applies to their DCMWA claim – *i.e.*, (i) the former version of the statute, which was in effect when they were performing the work at issue in this case, or (ii) the present version of the statute, which was in effect when they filed their Initial Complaint.  *See*, *e.g.*, *Eley*, 2015 WL 5611331, at *4 ("if Plaintiffs wish to pursue their DCMWA claims collectively, they will need to submit supplemental briefing that addresses the impact of the new DCMWA language on these claims").  If the Named Plaintiffs elect to file such a brief, it must be filed by no later than two months from the issuance date of this Memorandum Opinion.  If the Named Plaintiffs file such a brief, a response may be filed by no later than one month thereafter.

**V.      CONCLUSION**

For the reasons set forth above, the Named Plaintiffs' Motion for Conditional Certification of Collective Action and to Facilitate Notice is hereby **GRANTED IN PART and DENIED IN PART**.

An appropriate Order accompanies this Memorandum Opinion.


Date:  March 28, 2016


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge